MoKiNNey, J.,
delivered tbe opinion of tbe court.
This was a proceeding instituted by Wade under tbe act of 1854, cb. 32, sec. 12, to contest tbe election of Murry to tbe office of attorney general for tbe fourth judicial circuit.
On tbe 9tb of June, 1854, Wade presented a ‘Worn statement of tbe ground of contest to tbe chancellor of tbe division in which said election was held.”
Tbe chancellor, in pursuance of tbe directions of tbe statute, appointed tbe 17th of July for tbe trial, at Carthage. Murry was served with a copy of tbe “statement,” and notified of tbe time and place of trial, as required by tbe statute.
It appears that sometime before tbe day fixed for said trial, chancellor Ridley, tbe presiding chancellor of that division, certified to tbe Governor,, that, from “physical disability,” be would be unable “to bold tbe next terms • of tbe chancery court at La Fayette, Gains-boro, and a case of contested election for attorney general, at Carthage, on tbe 17th day of July next.” Whereupon, tbe Governor, on tbe 6th day of July, appointed and commissioned Samuel M. Fite, Esq., “special chancellor to bold said terms of said court at La-Fayette, Gainsboro, and Carthage,” &c.
Tbe trial took place before tbe special chancellor on tbe day appointed, and tbe election of Murry was declared illegal and void, on tbe ground that tbe sheriff of Smith county bad failed to open and bold an elec *53 tion in tbe ninth civil district of said county; and that tbe sheriff of DeKaLb had, in lite manner, failed to open and hold an election in the thirteenth civil district of the last named county. From this decision Murry prayed an appeal in the nature of a writ of error to this court, which was granted. ' A bill of exceptions, setting forth all the evidence in the case, is contained in the transcript, which, in our view of the case, need not be noticed.
At the November term of the circuit court of Smith, Murry presented his petition, in open court, setting forth the entire proceedings had before the chancellor on the trial of said contested election, and praying the court to grant him a certiorari to remove the proceedings into said circuit court. The petition shows that an appeal in error to the supreme court had been prayed and granted, from the decision of the chancellor, but ' stated, that as doubts had been suggested whether the appeal would lie in such a case, it was deemed proper to apply for a certiorari to remove the case into the circuit court, so that if the petitioner failed in the mode first adopted, he might, in the latter mode, obtain a revision and reversal of the chancellor’s decision, which is alleged to be erroneous. The circuit judge declined to entertain jurisdiction of the matter, and refused to grant the prayer of the petition, and from this refusal of the court, Murry also prosecuted an appeal in error to this court. The two cases were submitted together, and the questions properly arising in both, will be considered.
And, first, will an appeal in error lie from the chancellor’s decision?
*54 The argument, that, notwithstanding the statute in question points out no method by which the proceedings before the chancellor may be revised, still, under the general law giving an appeal, or writ of error, from every final judgment or decree of a court of chancery, the appeal in error, in the present case, was properly granted, and may be maintained, is, we think, wholly untenable. It very erroneously assumes, that the jurisdiction is conferred upon the chancellor in his capacity of judge of a court of chancery.
The statute confers no jurisdiction upon the court of chanceiy. By the proper construction of the statute, a special tribunal is created for the trial of contested elections ■ held under its provisions, of which the person holding the office of chancellor for the division in which the contest may arise, is constituted the judge. This tribunal may not improperly be called a court/ but in its organization and mode of procedure, it is very unlike a. court of chancery. The proceedings are not of record; it is merely, required that a certified copy of the decision showing the ground thereof, shall be sent to the Governor. The proceeding is commenced, not in the regular form of a bill or petition, but by the presentation to the chancellor of a mere “sworn statement of the grounds of contest.” No process is required to be issued. The chancellor is to appoint a “day of trial,” not less than thirty nor more than fifty days from the day of such presentation; and a place of trial, at some point within the circuit in which such election was held;” and a copy of such “statement,” with the day and place of trial endorsed thereon is to '.be served on ■ the person whose election is contested, *55 or left at Ms usual .residence, by a sheriff or constable, at least twenty days before the trial. Erom tMs view of the peculiar organization of this tribunal, whose proceedings are not according to the common law forms, it is clear that no appeal, or writ of error, will lie to this court.
Anri, in the next place, we think it equally clear, that the omission to provide any mode by which the chancellor’s decision, „ upon the merits of the contest might be brought under revision, was an intentional omission. The legislature obviously intended, and perhaps for very sufficient reasons, to make the decision final and ■ conclusive upon the parties. And that it was competent to the legislature to deny to the parties the right to have a re-examination of the chancellor’s decision, in our opinion, admits of no doubt.
' The schedule to the amendments of the constitution provides, that the election of judges and attorneys for the State, shall “be held and made under a'law to be passed by the general assembly,” &c. In the execution of this power, and as incidental thereto, the • legislature, in order to guard against the corruption and palpable irregularities sometimes attending popular elections, wisely provided a tribunal to which an appeal might be made from the decision at the ballot box, and invested it with the power to declare the election void, for any sufficient cause. This tribunal was so constituted as reasonably to justify the presumption that its decisions would do equal and impartial justice according to the law of the land, and therefore ought to be satisfactory to the parties: And no doubt the framers of the law thought it better that an erroneous de- *56 cisión, upon the facts or law of a particular case, should' be submitted to by a single unsuccessful aspirant, rather than that the public should be subjected to the great inconvenience and mischiefs of having the administration of justice suspended or impeded by a protracted litigation in the different courts. For this reason, as we suppose, the legislature deemed it proper to make the summary decision of the chancellor conclusive. In this view, the appeal in error, must be dismissed.
The next question is: can the writ, of certiorari be resorted to upon any ground disclosed in the petition? We think not. It is true, that this tribunal, created by the act of 1854, is an inferior .jurisdiction, in the moaning of our constitution and laws: and it is equally true, that the certiorari is the appropriate method by which the circuit court, as a court of general jurisdiction, exercises control over all inferior tribunals. But it would be contradictory to hold, that a writ of error proper would not lie, and yet that the certiorari as a substitute for the writ of error, might be maintained: and it would be no less contradictory or absurd to hold, that a decision intended to fie final and conclusive, could be reviewed in any mode whatever.
We do not mean to say, however, that the certio-rari might not be resorted to, for some purposes, in a case like the present: we think it might. In a case involving a question as to the legal competency of the judge; or showing such a substantial departure from the course of proceeding prescribed in the statute, as would render the proceedings void, the certiorari would be the proper remedy. ‘ If, for example, it were correct, as was suggested in the present case, that the jurisdiction *57 conferred by the' act of 1854, was in the nature of a personal trust, delegated to the chancellor, it might well be doubted, whether it could be rightfully exercised by an appointee of the Governor, commissioned for that particular purpose, and this question would be a proper matter of investigation in the circuit court, upon the certiorari. But we are of the opinion, that this jurisdiction is not to be viewed as a personal trust, specially delegated to the chancellor of the division in which the case may arise; and may, therefore, be exercised by any one properly invested, for the time, with the authority and junctions of chancellor for such division. Upon the facts disclosed in the petition, no question can be made as to the competency of the special chancellor, or the regularity of his appointment. The state of facts assumed in his commission, makes a proper case, under the constitution and law, for the appointment by the Governor.
Assuming the position, as we do, that if the proceedings be regular, and in substantial conformity with the requirements of the statute, the decision of the chancellor cannot be re-examined with a view to the question, whether its conclusions, as to the law or facts are correct; and no material irregularities intervened in the course of proceeding in this case, we are of opinion that the application for a certiorari cannot be sustained.
The merits of this case not being open to examination before us, we avoid any intimation of our opinion as to the correctness of the chancellor’s decision.
The result is, that the appeal in error must be dismissed, and the judgment of the circuit court, refusing the certiorari-, affirmed.